UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD EUGENE MOTLEY, | No. 2:24-cv-00002-DJC-EFB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| PATRICK COVELLO, *et al.*, | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The action proceeds on plaintiff's complaint, alleging claims under the First and Eighth Amendments to the U.S. Constitution along with a state-law negligence claim against defendants for unsanitary conditions in the "B" kitchen and dining hall at Mule Creek State Prison ("MCSP"). ECF Nos. 1, 7. Currently pending before the court is plaintiff's motion for a preliminary injunction "enjoining with defendant his successors in office, agents, and employees and all other persons acting in concern [sic] and participation with him to 1) discontinue any and all operations of B dining and cause an inspection by the California Health Department and/or OSHA to determine when it is safe to resume operations; 2) put an end to the campaign of harassment and retaliation by MCSP staff; 3) terminate, in the interest of justice the falsified rule violation reports generated by MCSP staff." ECF No. 11 at 9. For the reasons that follow, the court recommends that the motion be denied.

### I. Background

This case proceeds on plaintiff's original complaint. ECF No. 1. In screening the complaint, the court found the following cognizable claims:

(1) Against defendants Covello (MCSP warden at the relevant time), Doe No. 1 (Supervising Cook), and Doe No. 2 (Food Manager) for unsanitary conditions in the "B" dining hall/kitchen in violation of the Eighth Amendment;

(2) Against defendants Gates (Chief of Health Care Appeals) and Mosely (Appeals Coordinator) for impeding plaintiff's attempts to gather evidence in support of his grievances concerning the kitchen conditions in violation of the First Amendment;

(3) Against defendant Armenta (Correctional Counselor) for failing to send plaintiff's filing regarding the kitchen conditions to the California Government Claims Board in violation of the First Amendment; and

(4) Against defendants Covello, Doe No. 1 (Supervising Cook), Doe No. 3 (Doctor), Mosely, Gates, Doe No. 4 (Watch Commander), Doe No. 5 (Nurse), and Armenta for negligence.

ECF Nos. 7 (screening order), 10 (plaintiff's notice of election to proceed on claims recognized by the screening order as potentially cognizable). Defendants inform the court that, since the filing of this action, defendant Covello has retired from his position as Warden of MCSP. ECF No. 26 at 10. The official website for the prison lists Luis Garnica as his successor. Cal. Dep't of Corr. and Rehab. Website, available at https://www.cdcr.ca.gov/facility-locator/mcsp/ (last checked August 8, 2025). Plaintiff has yet to amend the complaint to identify the Doe defendants, although he identifies Doe No. 1 as L. Valadez, a weekly inspector of the dining hall, in a request for judicial notice.[1] ECF No. 30. (To properly name Valadez in this suit, plaintiff must seek to file an amended complaint.)

////

////

---

[1] Plaintiff's request seeks judicial notice of several "facts". ECF No. 30 at 1. None of the facts are proper subjects of judicial notice, and thus plaintiff's request is denied. Fed. R. Evid. 201.

2

II.     **The Motion for Preliminary Injunction**

A. *Legal Standard*

Plaintiff seeks either a temporary restraining order or preliminary injunction. ECF No. 11 at 1. Such an order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Haw. County Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997) ("The standards for granting a temporary restraining order and a preliminary injunction are identical."); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order). The purpose of the order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

To be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

B. *Plaintiff's Evidence*

Concerning the B Dining Hall. Plaintiff argues that defendant Covello has not ensured that the B dining hall is safe. He has submitted supporting declarations from five inmates. Inmate Jesus Campos declares that he works in B dining hall. ECF No. 11 at 16. He avers as follows: Roaches live in the walls of B dining hall and climb out into the kitchen in droves. *Id.* Only six of the nine ovens in the kitchen work. *Id.* The "big steam kettle" does not work. *Id.* Workers have found insects and insect eggs inside oatmeal packets. *Id.* Campos has found rat droppings inside rice sent from the main kitchen on several occasions. *Id.* B dining hall is infested with rodents and roaches; the staff knows this and does nothing to abate it. *Id.*

Inmate H. Ahmad declares: On September 24, 2024, a roach crawled out from under his dinner roll. *Id.* at 18. Other inmates had roaches on their trays the same day. *Id.* Ahmad sees

1  living and dead roaches in the dining hall regularly. *Id.* Inmate Fred Schiele echoes Ahmad's
2  observations. *Id.* at 20.
3       Inmate Alex Mascoe reiterates Ahmad's observations and further avers that he has seen
4  rats in B dining hall. *Id.* at 19. Inmate Mark McKibbon similarly echoes Ahmad and declares
5  that he also had a roach on his tray a few months earlier. *Id.* at 21. McKibbon avers that the
6  dining hall is very dirty and "it is known throughout the facility" that it is infested with roaches
7  and rats. *Id.*
8       <u>Concerning Retaliation.</u>  In support of his request for an injunction prohibiting retaliation
9  and seeking expungement of rules violation reports ("RVRs"), plaintiff has submitted three RVRs
10 from P. Dinger (a non-party, apparently plaintiff's supervisor at his prison job), dated August 29,
11 2024, September 6, 2024 and September 10, 2024. *Id.* at 35, 37, 43. These RVRs address (1)
12 plaintiff being absent from his work station and instead being in the law library, (2) plaintiff being
13 absent from work, and (3) plaintiff getting into an argument with Dinger. Plaintiff has also
14 submitted inmate declarations concerning Dinger and documents from his administrative appeals
15 submitted to challenge the RVRs. *Id.* at 51-59.
16      Plaintiff also submits an RVR dated September 8, 2024 from B. Maloney (a non-party) for
17 delaying a peace officer in performance of duties after plaintiff refused to leave the dayroom until
18 his cellmate was moved from his cell. *Id.* at 41. Lastly, plaintiff submits an RVR dated
19 September 9, 2024 from E. Ochoa (a non-party), issued after a similar interaction in the dayroom.
20 *Id.* at 39.
21      C.  *Defendants' Evidence*
22      <u>Concerning the B Dining Hall.</u>  Defendants submit the declaration of Michael Lee,
23 Correctional Food Manager II at MCSP, who oversees all aspects of the prison's food service
24 program, including B dining hall. ECF No. 26-1 at 16 et seq., ¶ 1. Lee declares as follows: In
25 early 2025, holes in the B dining hall structure were repaired and two new ovens were purchased
26 and installed. *Id.* ¶ 2. A correctional supervising cook inspects the kitchens each day in the
27 morning and evening, and cleaning and sanitizing is performed as needed. *Id.* ¶ 3. All kitchen
28 areas and equipment undergo a deep cleaning each week. *Id.* A supervising correctional cook

conducts weekly inspections and an associate correctional food manager conducts monthly inspections of all kitchens. *Id.* Lee concedes that MCSP's kitchens have suffered pest issues, but declares that steps have been taken to correct those issues. *Id.* ¶ 5. In addition to repairing holes in the dining hall structure, pest control professionals have been hired and regularly service the MCSP kitchens. *Id.* The Inmate Advisory Council meets with food service management every month to address issues that arise. *Id.* ¶ 7. After every meal, kitchen staff creates a sample tray of food served that is maintained for five days in case a food safety issue arises; no tray has ever needed to be tested since Lee started in his position in 2018.[2] *Id.* ¶ 8. No named defendant has authority to shut down or otherwise limit the operation of B dining hall. *Id.* ¶ 10.

Defendants have provided, as exhibits to the Lee declaration, daily inspection reports for B dining hall from September 29, 2024 through March 30, 2025. ECF No. 26-1 at 5-30. These reports do not find any major issues, but appear to have been filled out largely pro forma and are not thus particularly helpful to the court. The same can be said for the weekly inspection reports from January and February 2025, which find conditions in the B facility largely satisfactory and appear nearly identical to each other. *Id.* at 32-39. Notably, the daily and weekly inspection reports are silent regarding pest infestation, but the monthly inspection reports for January and February 2025, also submitted as exhibits to the Lee declaration, state:

> Mouse infestation in storeroom and droppings throughout. Reach in cold boxes not working. Outside refer [sic] is dirty and needs cleaning. Inside refer needs dating and mold cleaned off shelfs and walls. Work orders submitted for multiple equipment issues and safety concerns.

*Id.* at 43, 50.

Concerning Retaliation. Defendants argue that plaintiff's request for an injunction concerning retaliation and the RVRs fails for the reasons discussed below; they submit no evidence on the issue.

////

---

[2] The court notes that plaintiff's administrative appeal concerning the incident of food poisoning complained of in the complaint (in May 2022) was granted because prison officials did not produce a sample tray for testing, making it impossible to determine whether the food plaintiff ingested was contaminated. ECF No. 11 at 64.

5

D. *Analysis*

Concerning the B Dining Hall. Defendants argue that none of the named defendants have "authority to order the shutdown or any other operating limitations of any of the kitchens at MCSP, including B dining hall." ECF No. 26 at 10. And, according to defendants, the court lacks jurisdiction to enjoin non-party MCSP staff. *Id.* Federal Rule of Civil Procedure 65(d)(2) does not prohibit the court from enjoining the action of a non-party, however. Instead, it provides that such an order binds "other persons who are in active concert or participation with" a party or a party's agent. Fed. R. Civ. P. 65(d)(2)(C). "An injunction binds a non-party only if it has actual notice [of the injunction] and either abets the enjoined party in violating the injunction or is legally identified with the enjoined party." *Consumer Financial Protection Bureau v. Howard Law, P.C.*, 671 Fed. Appx. 954, 955 (9th Cir. 2016) (internal quotation marks and citations omitted). "Legal identity" can be found based on either the non-party's close affiliation with the enjoined party prior to the issuance of the injunction or its status as a successor to the enjoined party after the injunction issues. *Id.*

As the case stands at present, the court accepts defendants' evidence that no named party has authority to close the dining hall and abate any sanitation issues there. No party has addressed, however, whether Luis Garnica shares "legal identity" with defendant Covello as his successor in the position of warden of MCSP such that an injunction would bind Garnica, a non-party to this action. Because it would be pointless for the court to issue an injunction that does not bind any party with authority to take the action directed by the injunction, the undersigned recommends that the court deny the motion without prejudice to its renewal either (1) accompanied by briefing on whether the requested injunction would be effective despite Covello's retirement or (2) following amendment of the complaint to name at least one party with authority over B dining hall.

Concerning Retaliation. Plaintiff's complaint does not proceed on any retaliation claim, and the individuals he asserts have retaliated against him are not parties to this lawsuit. In addition, none of plaintiff's evidence establishes or even suggests that the correctional staff members who issued the RVRs to him knew of this lawsuit, issued the RVRs to retaliate against

plaintiff for bringing this suit, or lacked a legitimate correctional reason for issuing the RVRs.[3] Accordingly, there is no basis for issuing the requested injunction prohibiting retaliation and ordering expungement of the RVRs.

### III. Recommendation

Accordingly, it is hereby RECOMMENDED that plaintiff's October 18, 2024 motion for a temporary restraining order be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 20, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[3] To state a claim for retaliation in violation of the First Amendment, a prisoner must allege facts showing five elements: (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, (4) that such action chilled his exercise of his First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).