UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD MOTLEY, | No. 2:24-cv-00002-DJC-EFB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| PATRICK COVELLO, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  This case proceeds on plaintiff's complaint alleging First Amendment, Eighth Amendment, and state law negligence claims based on an illness allegedly caused by unsanitary food service at the Mule Creek State Prison (MCSP).  ECF Nos. 1, 7.

Background And TRO Requests

Complaint And TRO Relief Requested.  Plaintiff's complaint alleges that he became ill after eating a chicken dinner at the Mule Creek State Prison (MCSP) on May 25, 2022.  ECF No. 1 at 3.  On May 27, 2022, he was taken to the hospital where he was diagnosed with enteritis. The complaint alleges that that plaintiff's illness was caused by unsanitary conditions and food preparation at the MCSP "B" dining hall.  Plaintiff brings claims under the Eighth and Fourteenth Amendments, as well as a state law negligence claim.  Among other requests, the complaint seeks an order for MCSP officials "to cease all operations in the 'B' dining hall until a complete

1

1  inspection by both OSHA and the California Department of Health Services is completed to
2  ensure that the dining hall is safe, sanitary, and up to required standards." ECF No. 1 at 15.

3      First TRO Motion.  On October 18, 2024, before the court screened plaintiff's complaint,
4  he filed his initial motion for a temporary restraining order ("First TRO Motion") requesting an
5  order directing the defendants to "cease operations" of the dining hall.[1]  ECF No. 11.  ECF No. 11
6  at 9.  Defendants filed their opposition to the First TRO Motion on April 16, 2025, arguing that
7  the plaintiff and other prisoners have continued to eat at the dining hall without incident and
8  therefore plaintiff cannot show irreparable harm, whereas closing the "B" dining hall would cause
9  significant hardship for the prison.  ECF No. 26 at 5.  Thereafter the parties attempted to settle the
10 case through the court's settlement program.  Those efforts were ultimately unsuccessful.  *See*
11 ECF Nos. 35-38.

12     Second TRO Motion.  Following a settlement conference, plaintiff filed another TRO
13 motion ("Second TRO Motion") on September 8, 2025, ECF No. 41, renewing his request for
14 preliminary injunctive relief to address health and safety issues in the dining hall.  He submitted
15 additional evidentiary exhibits, including declarations from other MCSP inmates and reports
16 regarding faulty equipment and insufficient hot water.

17     On October 6, 2025, before defendants filed their response to the Second TRO Motion,
18 plaintiff filed a "request to preserve status quo" which asserted that the "B" dining hall failed an
19 OSHA safety inspection on September 25, 2025 and was closed.  ECF No. 50.  Defendants'
20 response explains that the "B" dining hall was closed by the MCSP Correctional Food Manager
21 because an excessive number of mice had been caught in sticky traps in late September 2025.
22 ECF No. 54 at 5-6; ECF No. 54-2 at 2 ¶ 7.  The "B" dining hall was reopened on September 30,
23 2025, after repairs and cleaning.  ECF No. 54-2 at 2 ¶¶ 7-9.  Defendants point to an anticipated
24 annual inspection by the California Department of Public Health (DPH) between November 3-7,

---

[1] The First TRO Motion also asserted that MCSP officials retaliated against plaintiff for bringing this lawsuit, and it asks the court to order an end to the retaliation and to also order termination of an allegedly false rules violation report.  ECF No. 11 at 1-5, 9.  Plaintiff has not further pursued this issue, nor was it raised in his current complaint.

2

1  2025, and they note that such an inspection was the relief sought in plaintiff's TRO requests.

2  ECF No. 54 at 6.  Defendants also argue that it is unclear whether the meal which allegedly

3  caused plaintiff's enteritis in May 2022 was prepared in the "B" dining hall kitchen, versus the

4  "A" dining hall kitchen.[2]  ECF No. 54 at 3.

5        Plaintiff's reply, filed on November 12, 2025, maintains that the court's intervention is

6  necessary because of continued unsanitary food services.  ECF No. 57.

## Legal Standard

A TRO or preliminary injunction may be issued based upon a showing "that immediate and irreparable harm, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Haw. County Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997) ("The standards for granting a temporary restraining order and a preliminary injunction are identical."); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a TRO).  The purpose of the order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer," *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974), and to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir. 1989).  A preliminary injunction represents the exercise of a far-reaching power not to be indulged except in a case clearly warranting it.  *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964).

To be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. NRDC*,

---

[2] Plaintiff has alleged unsanitary food preparation, and his allegation is that the meal in question was prepared in the "B" dining hall.  Defendants' point in disputing whether the meal was prepared in the "A" or the "B" dining hall is unclear.  In any event, as discussed below, the point is ultimately moot.

3

1 *Inc.*, 555 U.S. 7 (2008)).  The Ninth Circuit has held that the "sliding scale" approach it applies to
2 preliminary injunctions – that is, balancing the elements of the preliminary injunction test, so that
3 a stronger showing of one element may offset a weaker showing of another – survives *Winter* and
4 continues to be valid.  *Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir.
5 2010). "In other words, 'serious questions going to the merits,' and a hardship balance that tips
6 sharply toward the plaintiff can support issuance of an injunction, assuming the other two
7 elements of the *Winter* test are also met." *Id.*  In cases brought by prisoners involving conditions
8 of confinement, any preliminary injunction "must be narrowly drawn, extend no further than
9 necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive
10 means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

Analysis

12    The record now before the court indicates that plaintiff's First and Second TRO Motions
13 have both been mooted by subsequent events.  The relief sought by plaintiff has now occurred.
14 The "B" dining hall was temporarily closed by MCSP officials for cleaning and repairs in
15 September 2025, and California DPH officials were scheduled to conduct an inspection in early
16 November 2025.  Plaintiff has not presented evidence that the unsanitary conditions have
17 persisted after those repairs and inspection.  Accordingly, plaintiff's First TRO Motion and
18 Second TRO Motion should be denied without prejudice to renewal if those conditions recur.

**RECOMMENDATIONS**

20    Accordingly, it is hereby RECOMMENDED that:
21    1. Plaintiff's motion for a temporary restraining order, ECF No. 11, be DENIED.
22    2. Plaintiff's renewed motion for a temporary restraining order, ECF No. 41, be DENIED.
23    These findings and recommendations are submitted to the United States District Judge
24 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days
25 after being served with these findings and recommendations, any party may file written
26 objections with the court and serve a copy on all parties.  Such a document should be captioned
27 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
28 objections shall be filed and served within fourteen days after service of the objections.  The

4

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 16, 2025

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE