UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDWARD MOTLEY,

Plaintiff,

v.

PATRICK COVELLO, et al.,

Defendants.

No. 2:24-cv-0002-DJC-EFB (PC)

ORDER AND FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. His complaint alleges Eighth Amendment, First Amendment, and state law negligence claims related to his illness allegedly caused by unsanitary food service at the Mule Creek State Prison (MCSP). ECF Nos. 1, 7. The named defendants are Acting Warden of MCSP Luis Garnica (substituted for former Warden Patrick Covello);[1] Appeals Coordinator H. Moseley; Chief of Health Care Appeals S. Gates; and Correctional Counselor C. Armenta.[2] Plaintiff has filed a motion to compel discovery, a motion to deem his requests for admission as admitted, and

[1] Garnica has been substituted as the defendant as to plaintiff's claims due to Covello's retirement. ECF No. 44. But as discussed below, as to the Eighth Amendment individual liability claims plaintiff has alleged for damages against Covello for actions taken during Covello's tenure, Covello is the appropriate defendant. *See* ECF No. 68-3 at 11, 17.

[2] Plaintiff also has named several Doe defendants (correctional supervising cook, correctional food manager, medical doctor, watch commander at MCSP, and medical nurse), but he has not sought substitution for any of the Doe defendants.

a motion for entry of default judgment. As discussed below, plaintiff's motion to compel discovery is granted in part and denied in part, and his motions for entry of default judgment and to have his requests for admission deemed admitted are denied.

Further, defendants have filed a motion for summary judgment. The undersigned recommends that the motion be granted in part and denied in part without prejudice to its renewal on a more fully developed record.

**BACKGROUND**

Plaintiff's claims arise from a gastric illness that began on May 25, 2022. ECF No. 1 at 1. He attributes his illness to improper food handling of the chicken he was served on his dinner tray at MCSP. Plaintiff went to the prison's clinic where he was given a dose of Zofran for his nausea, but this caused him to vomit more violently than before. *Id*. at 3-4. He was sent to an off-site emergency room where he was diagnosed with enteritis, treated, and discharged. *Id*. at 4. He alleges Covello was deliberately indifferent in allowing conditions of unsanitary food preparation.

He alleges defendants Moseley and Gates hampered his attempts to gather information for purposes of filing grievances about these matters. *Id*. at 5-7. He alleges defendant Armenta hampered his efforts to file a late claim with the California Government Claims Board. *Id*. at 7-8. The court screened in: (1) an Eighth Amendment claim against the warden (retired warden Covello, and acting warden Garnica to the extent plaintiff seeks injunctive relief); (2) First Amendment claims against Moseley, Gates, and Armenta; and (3) negligence claims against all defendants.

The motions under consideration here require a contextual understanding of pivotal factual issues presented in this record. The parties agree that the meal plaintiff consumed on May 25, 2022 was served to him in his cell in the B housing unit, but they dispute where the meal was prepared.

They agree that the meal was delivered to plaintiff's cell because the B dining hall (where the B housing unit inmates usually eat their meals) was closed. Plaintiff alleges this is because black mold had caused a portion of the ceiling in the B dining hall to collapse and inmates were

not going there to eat as of May 25, 2025. According to him, the B dining hall had been closed for some time prior to his arrival at the prison in April 2022, but the kitchen in that dining hall was still in use and inmate workers were reporting to work there. ECF No. 75 at 1 ¶ 3; *see also* ECF No. 41 at 10 (inmate Joshua Donson declares that he was assigned to work in the B dining hall between January and March 2022 and that a ceiling cave-in caused the dining hall closure). He maintains that the meal that sickened him was prepared in the B kitchen, and he also points to evidence of the existence of a temperature log for the B dining hall kitchen indicating that food was prepared there on May 25, 2022. ECF No. 75 at 3 ¶ 8 (citing "Ex. D," which the court construes as a reference to ECF No. 68-5 at 12).

The parties agree that at some point in time the kitchen of the B dining hall was also closed. This necessitated that meals for B housing unit inmates be prepared in the A housing unit's kitchen. But the parties contest the timing of the B kitchen closure. Plaintiff asserts that the B kitchen's closure was a distinct event that occurred after the B dining hall itself had been closed. ECF No. 75 at 1 ¶ 3. Defendants instead generally refer to the closure of the "B dining hall" as a single unitary event, including closure of the kitchen as well as the dining area. *See* ECF No. 68-2 at 2 (defendants' statement of undisputed material facts, at No. 3, asserts that "[i]n mid-2022, a pipe burst in the pot scullery wall of the dining hall B, and the repair work required the temporary closure of the B dining hall *and* kitchen" (emphasis added)). Thus, there appears to be a dispute as to whether the B kitchen was still used to prepare inmate meals even though the B dining hall had to be closed.

Plaintiff's opposition to summary judgment is based, in part, on his request for more time to conduct discovery on the disputed facts. The court grants in part plaintiff's motion to compel discovery which may provide development of the factual record on these contested issues and recommends that defendants' motion for summary judgment be granted in part but denied without prejudice as to claims that turn on the issues over which additional discovery is granted.

////

////

////

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

A. Preliminary Considerations: Timeliness, Meet and Confer

The court ordered defendants to respond to plaintiff's requests for production (RFPs) by December 31, 2025. ECF No. 62. According to the declaration of service attached to defendants' responses, they timely served their responses on that date. ECF No. 69-1 at 11; ECF No. 69-1 at ¶ 2 (counsel's declaration). Plaintiff argues that defendants' response was untimely, apparently because he did not receive the responses until January 3, 2026. ECF No. 67 at 1. Plaintiff's argument fails, because defendants' responses were timely served upon mailing. Fed. R. Civ. P. 5(b)(2)(C).

Defendants argue that plaintiff did not seek to meet and confer before filing his motion, and that this alone is sufficient basis to deny his motion. However, this court's scheduling order (ECF No. 25) provided that Eastern District Local Rule 251, which echoes the meet-and-confer requirement of the Federal Rules, "shall not apply." ECF No. 25 at 1. This court routinely declines to enforce a meet-and-confer requirement in prisoner cases. *E.g., Kahaku v. Wallace*, No. 2:20-cv-1807 KJN P, 2022 WL 2333725, 2022 U.S. Dist. LEXIS 113959 (E.D. Cal. June 28, 2022); *Manning v. Bunnell*, 2:12-cv-2440 MCE AC P, 2014 WL 7336229, at *1, 2014 U.S. Dist. LEXIS 176355, at *6 (E.D. Cal. Dec. 19, 2014). Accordingly, the court finds that plaintiff's failure to meet and confer with defense counsel prior to filing his motion to compel is not a reason to deny it.

B. Merits of the Motion to Compel Document Discovery

Plaintiff argues that his discovery requests are intended to "obtain evidence that would reflect the state of the kitchen" as of May 25, 2022. ECF No. 75 at 25. The contested responses relate to plaintiff's RFP Nos. 1, 3, 5, 6, 7, 10, 14, 15, and 16. For the reasons stated below, the court denies the motion as to RFP Nos. 1, 3, 5, 6, 7, 10, and grants the motion as to RFP Nos. 14, 15, and 16. The requests are addressed seriatim.

> RFP No. 1: Any reports and findings of all audits and/or inspections of "B" dining conducted by any and all outside agencies dating from May of 2022 through the current date.

////

ECF No. 66 at 1. Defendants maintain, and plaintiff does not dispute, that they produced responsive documents. But plaintiff maintains that defendants' response is incomplete because defendants have not produced the results of an audit conducted by the California Department of Health in November 2025. *Id*. at 1-2; ECF No. 69 at 3. Defendants maintain they had not received the results of the audit as of December 31, 2025, when they provided their responses, and it implicitly appears that they had not received the audit results as of February 9, 2026, the date they responded to plaintiff's motion. *See* ECF No. 69 at 3.

Rule 26(e) imposes a duty to supplement or correct discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." "The Ninth Circuit has not addressed whether the duty to supplement ends with the close of discovery...." *Sanders v. University of Idaho College of Law*, No. 3:19-cv-225-BLW, 2022 WL 280875, at *3 (D. Idaho Jan. 31, 2022) (citations omitted). The court in *Sanders* held that regardless whether discovery has closed, the duty to supplement extends to "later created or generated information that is both relevant and material to the accuracy and completeness of [] earlier responses to [] prior discovery requests." *Id*. at *5. Applying this standard here, an audit conducted approximately three and a half years after plaintiff's illness has minimal, if any, material relevance to his claims. The court will not compel defendants to supplement their response to RFP No. 1 with the results of the November 2025 audit.

> <u>RFP No. 3</u>: All daily cleaning records, weekly inspections, and monthly inspections conducted for "B" dining, dating from May of 2022 through August of 2024 [sic], including April – May of 2025.

ECF No. 66 at 2. Defendants state that the prison maintains these records for only two years, and that they have produced responsive and non-privileged documents from 2024 through the present. ECF No. 69 at 3; ECF No. 69-1 at 6. Plaintiff posits that "there must be documents maintained elsewhere," ECF No. 66 at 2, but he does not show that defendants have failed to produce documents in their possession, custody, or control.

Plaintiff also argues that defendants have not fulfilled their duty to preserve evidence, ECF No. 73 at 4, but he has not shown that defendants were on notice to do so. Plaintiff's complaint was filed on January 2, 2024, and his claims were screened in on August 30, 2024,

more than two years after the illness which is the subject of plaintiff's claims, and after the two-year document retention timeframe had already expired. For these reasons, the court will deny plaintiff's motion with respect to RFP No. 3.

> RFP No. 5: All work orders and reports regarding the ceiling caving in in "B" dining sometime in late 2021, early 2022.
>
> Response to RFP No. 5: Objection. This request seeks documents that are irrelevant to the claims in this case. It is also vague and ambiguous as to the term "ceiling caving" and the date of the alleged "ceiling caving." Subject to and without waiving such objections, Responding Party responds as follows:
> MCSP maintenance records only go back to 2023 due to Plant Operations switching maintenance systems from SAPMS to TRIRIGA. As a result, Responding Party is unable to locate any responsive documents.
>
> RFP No. 6: All maintenance reports regarding the cause of the ceiling caving in, who repaired it, and how it was repaired.
>
> Response to RFP No. 6: Objection. This request seeks documents that are irrelevant to the claims in this case. It is also vague and ambiguous as to the term "ceiling caving" and the date of the alleged "ceiling caving." Subject to and without waiving such objections, Responding Party responds as follows:
> MCSP maintenance records only go back to 2023 due to Plant Operations switching maintenance systems from SAPMS to TRIRIGA. As a result, Responding Party is unable to locate any responsive documents.

ECF No. 66 at 2-3. The parties dispute the relevance of these records to plaintiff's claims. Defendants assert that the ceiling collapse is irrelevant because it was not the reason for closure of the dining hall, but rather the dining hall was closed due to a broken pipe in the pot scullery wall. ECF No. 69 at 4. But as noted, plaintiff alleges that the dining hall was already closed because the ceiling had collapsed. ECF No. 73 at 4. The factual dispute about the reason and timing of the dining hall closure is clearly relevant. However, defendants' response also includes the representation that the maintenance records only go back to 2023. Plaintiff has not presented any information showing that this representation is untrue. Thus, the court will deny plaintiff's motion as to RFP No. 5 and RFP No. 6 because plaintiff has not shown that defendants have possession, custody, or control of any responsive documents. However, the court will order defendants to provide further response to RFP Nos. 14, 15, and 16, which ask for other records which may provide information about these events.

////

> RFP No. 7: The procedures regarding the temperature of the food after it is put on the trays and served to the population.
>
> Response to RFP No. 7: Objection. This request is vague and ambiguous as to the phrase "temperature of the food after it is put on the trays and served to the population." Subject to and without waiving such objections, Responding Party responds as follows:
>
> Following a diligent search and reasonable inquiry, Responding Party has been unable to locate any responsive documents. Defendants will, however, produce a sample of temperature logs which are kept each day for food served in Bravo kitchen.[3]

ECF No. 66 at 3. Plaintiff's motion disputes defendants' assertion that responsive documents do not exist, but he does not show any reason to conclude that they do exist. *Id*. at 4. In his reply plaintiff states that "[i]f there are no procedures for maintaining the temperature of the food for the time periods [after the food is put on the trays until it is served to the inmate population], Plaintiff accepts it." ECF No. 73 at 5. His reply appears to moot plaintiff's motion as to RFP No. 7, and for this reason the court will deny his motion as to RFP No. 7.

> RFP No. 10: An itemized list of how many appliances (ovens, grills, stand up warmers, etc.) are in "B" dining and what is operable and what isn't.
>
> Response to RFP No. 10: Objection. This request is vague and ambiguous as to time and it is overbroad. It also seeks documents that are irrelevant to the claims in this matter. Subject to and without waiving such objections, Responding Party responds as follows:
>
> All responsive and non-privileged documents will be produced.

ECF No. 69-1 at 8. Plaintiff acknowledges that defendants produced "a document titled 'B KITCHEN WALK THROUGH', which has no dates or names regarding who generated and authorized it." ECF No. 66 at 4. He argues this document is not responsive, and he points to a possible discrepancy in a witness declaration as to whether certain kitchen equipment was repaired as of September and October 2025. ECF No. 66 at 5 (citing ECF No. 54 at 5 regarding the Supplemental Declaration of M. Lee). Defendants argue that RFP No. 10 does not state any time frame and does not specifically ask for information about equipment under repair as of October-November 2025, that the prison does not keep such itemized lists for specific dates, and that records from 2025 would have no bearing on plaintiff's claim of food poisoning that occurred in May 2022. ECF No. 69 at 5. Plaintiff replies that he has "alleged that the preparation of the

[3] The court construes the term "Bravo kitchen" as referring to the B dining hall kitchen.

food and the conditions that it was served under is what contributed to him being diagnosed with Enteritis[,]" but his argument does not refute defendants' assertion that they have no additional responsive documents in their possession, custody, or control. ECF No. 73 at 5. The alleged discrepancy that plaintiff describes is not a basis to order further response, for the same reason. The court will not order defendants to provide further response to RFP No. 10.

> RFP No. 14: All communications between Declarant Michael Lee and Plant Operations regarding the maintenance of "B" dining dating from May 2022 up to the current date.
>
> Response to RFP No. 14: Objection. This request is vastly overbroad and seeks documents irrelevant to the claims in this matter. It is also vague and ambiguous as to "Plaint Operations" and does not identify an[y] specific employee(s). Responding to this request would be unduly burdensome and harassing in that it would require searching through potentially thousands of emails.

ECF No. 66 at 5; ECF No. 69-1 at 9. Plaintiff argues that defendants "did not produce a single document to this request such as the status and fulfillment of work orders at the very least." ECF No. 66 at 5. Defendants answer that RFP No. 14 requests documents that are not relevant to plaintiff's claims in this lawsuit because they assert the meal he consumed on May 25, 2022 was not prepared in the B dining hall, which they maintain was closed for repairs at that time. ECF No. 69 at 5. Defendants' relevance argument fails because as already discussed, plaintiff plausibly disputes whether the B kitchen was still in use to prepare meals. *See* ECF No. 73 at 6. Plaintiff posits that as of May 2022 there were issues in the B kitchen with inoperable or defective equipment, hot water temperature, equipment to keep the food warm during transport, and infestations, and he points to sworn statements of inmate workers, which the court construes as a reference to an inmate declaration submitted with the briefing on plaintiff's motion for temporary restraining order or preliminary injunction. *Id.*; *see also* ECF No. 41 at 10-11 (declaration of inmate Donson).

As for defendants' objection that the term "Plant Operations" is vague and ambiguous, ECF No. 69 at 5, defendant Covello himself uses this term in declaring that "Plant Operations ultimately devised and carried out a plan to remedy the issue[.]" ECF No. 68-7 at 2 ¶ 5. Defendants clearly have some notion of the organizational unit that "Plant Operations" refers to,

and the people involved.[4] They may of course explain their understanding of the term in their response. Finally, "searching through potentially thousands of emails" for responsive documents is not an unduly burdensome task. The court notes that plaintiff's request may be construed as including emails, but it is not specifically limited to email communications. Other types of responsive records must also be produced. For all these reasons, the court overrules defendants' objections to RFP No. 14 and will order defendants to produce responsive documents.

> RFP No. 15: All communications between Declarant[5] Michael Lee and the MCSP Inmate Advisory Counsel dating from May of 2022 up to the current date.
>
> Response to RFP No. 15: Objection. This request is overbroad and seeks documents irrelevant to the claims in this matter. It also is overbroad in that it is not limited to communications on any specific subject. Responding to this request would be unduly burdensome and harassing in that it would require searching through potentially thousands of documents.

ECF No. 66 at 5; ECF No. 69-1 at 14. Plaintiff argues that:

> Michael Lee's only communications with the Inmate Advisory Counsel [sic] [IAC] would obviously consist of food services matters. These documents are most certainly relevant to the claims and they are not made to harass. [] It is very relevant to [plaintiff's] claims and it goes to how responsive MCSP food services have been to the [i]ncarcerated person's input regarding the operations of the dining hall on B yard. More importantly it would show a pattern (good or bad) of the conditions of the dining hall on B facility.

ECF No. 66 at 5. Plaintiff's argument is persuasive because Lee has identified himself in his April 11, 2025 declaration as the correctional food manager at MCSP. ECF No. 26-1 at 1. Defendants respond by restating their objections, especially their claim that post-incident communications have no relevance to plaintiff's claim of food poisoning in May 2022. ECF No. 69 at 5-6. Plaintiff argues in reply that the communications he requests "would only consist of food service matters[,]" and it is not necessary for his request to name the member of the IAC (which he does not know). ECF No. 73 at 7. He asserts that minute orders from 2022 are

---

[4] The record also contains documentary submissions that refer to "PLANT OPS." *See* ECF No. 41 at 18.

[5] This is apparently a reference to the declaration of Michael Lee, submitted with defendants' opposition to plaintiff's motion for temporary restraining order and preliminary injunction. ECF No. 26-1.

retrievable and accessible because they do not involve maintenance systems, and they "will reflect the status of the dining hall(s) regarding the lack of hot water, equipment issues, and cleanliness[.]" *Id*.

The court overrules defendants' objections to RFP No. 15. Plaintiff has effectively limited his request (or shown that the request itself is self-limited) to communications regarding food service matters, which are relevant to his claims. "[S]earching through potentially thousands of documents is not unduly burdensome. For all these reasons, defendants must produce documents responsive to RFP No. 15.

> RFP No. 16: All documents going to and from Plant Operations dating from May 2022 up to the current date regarding the hot water lines in "B" dining.
>
> Response to RFP No. 16: Objection. This request is vastly overbroad and seeks documents irrelevant to the claims in this matter. It also is vague and ambiguous as to "regarding hot water lines." Responding Party is unable to respond further without clarification of this request.

Plaintiff apparently clarified his RFP No. 16 as follows:

> For unknown periods between May of 2022 up to the current date B dining has had no hot water. I am requesting all documents going to and from Plant Operations to remedy the problem, and give time lines demonstrating when the hot water was operable and when it wasn't beginning from May of 2022 up to the current date.

ECF No. 66 at 33 (emphasis in original).

The court overrules defendants' objections to RFP No. 16 because it is sufficiently specific, although plaintiff may not expand the scope of RFP No. 16 by requesting that defendants give him "time lines." Defendants must produce documents responsive to RFP No. 16.

C. Merits Of Plaintiff's Motion Regarding RFAs

Plaintiff has filed a pleading captioned as his "motion to clarify non opposition to plaintiff's request for admissions," which the court construes as a motion under Rule 36(a)(6) to have his requests for admissions (RFAs) be deemed admitted. ECF No. 65. He states as his sole basis that defendants did not respond to the RFAs by December 31, 2026, as ordered by the court. *Id*. Defendants acknowledge that they did not respond to the RFAs until January 15, 2026, citing

a calendaring error and holiday schedules. ECF No. 70 at 2. Plaintiff acknowledges he received defendants' answers on January 20, 2026. ECF No. 71 at 2.

Plaintiff's motion does not set forth any specific substantive dispute with defendants' answers, although his reply argues in conclusory fashion that defendants have been unresponsive to his discovery requests. ECF No. 65; ECF No. 71. Defendants have attached their answers to their response. ECF No. 70-1. Their answers are not facially insufficient.

A fifteen-day delay in responding to RFAs is not ideal, but it is insufficient grounds to support the extreme sanction plaintiff seeks. The court will deny plaintiff's motion.

**PLAINTIFF'S MOTION FOR SANCTIONS**

Plaintiff moves for "terminating sanctions" and/or for summary judgment on the grounds that defendants have misrepresented the conditions of the B kitchen and other matters in the course of defending against plaintiff's claims and answering his discovery requests. ECF No. 53 at 10-11. The court construes his motion as requesting that default judgment be entered in his favor pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(vi). He argues that a positive response to his grievance appeal is evidence that defendants have lied and abused the judicial process. ECF No. 53 at 2, 6.

Rule 37(b)(2)(A) permits the court to impose a range of sanctions when a party has failed to obey an order to provide or permit discovery. Default judgment under Rule 37(b)(2)(A)(vi) is very rarely selected as a sanction, and the discovery violations supporting it must be extreme. *See Red Wolf Energy Trading, LLC v. Bia Capital Management, LLC*, 626 F. Supp. 3d 478, 502 (D. Mass. 2022) (entering default judgment where the court had "issued escalating warnings to defendants concerning the consequences of violating their discovery obligations and ordered milder relief related to defendants' initial discovery violations"). Defendants' single tardy response to the court's order to answer RFAs is insufficient reason to issue any sanction under Rule 37(b)(2)(A), let alone a sanction as severe as entering judgment in favor of plaintiff. For these reasons, the undersigned denies plaintiff's motion.

////

////

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

A. Summary Judgment Standard Under Rule 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Costa County Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

////

////

////

B. Eighth Amendment Deliberate Indifference Claim Against the Warden

1. The Claim for Non-Injunctive Relief Must Be Alleged Against Covello

In its earlier consideration of plaintiff's request for a temporary restraining order and preliminary injunctive relief, the court ordered as follows. "While the previous Warden, Patrick Covello, has retired, under Federal Rule of Civil Procedure 25(d), the new Warden, Luis Garnica, is automatically substituted as a party." ECF No. 44 at 2. The Clerk then terminated Covello from the court's docket as of 09/15/2025 and added Garnica as a defendant.

Injunctive relief having been denied, the Eighth Amendment deliberate indifference claim remains unaddressed. But, as defendants point out, plaintiff has alleged his Eighth Amendment claim against Covello, not Garnica. It is Covello's acts and omissions that are alleged to have been deliberately indifferent.[6] ECF No. 68-3 at 17. The complaint does not allege any acts or omissions undertaken by Garnica, who was not the acting warden at the time in question. For this reason, the deliberate indifference claim must proceed, if at all, against Covello. Defendant's motion for summary judgment then proceeds to argue that summary judgment should be granted in favor of Covello as to the merits of the underlying factual allegations. This requires that the Clerk reinstate Covello as a defendant on the court's docket, which the motion necessarily implicitly requests. The order substituting the new Warden, Garnica, in place of Covello was issued in the context of addressing only official capacity claims for injunctive relief and does not purport to resolve individual liability claims for damages against Covello. Thus, the defendants' request in the motion for summary judgment that the court proceed to address the merits of those claims is well taken. Accordingly, it will be recommended that the Clerk be directed to reinstate Covello as the defendant for those Eighth Amendment claims for damages. Covello's motion for summary judgment as to those claims will be addressed below.

---

[6] These claims are predicated on Covello's own alleged conduct. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted).

As defendants also argue, Garnica should now be dismissed as a defendant because he cannot be found liable under § 1983 for any Eighth Amendment violation that occurred while Covello was the warden.

2. Deliberate Indifference Claim Against Covello

Defendants' motion for summary judgment on the deliberate indifference claim against Covello relies on: (1) their somewhat conclusory and contradictory argument that Covello lacked subjective knowledge of conditions in the B dining hall; as well as (2) their assertions regarding the factual record. ECF No. 68-3 at 18-20. Defendants' first argument fails because the record does not convincingly demonstrate that Covello has no supervisory liability. Their second argument fails because plaintiff plausibly disputes defendants' materially relevant factual assertions.

a) Supervisory Liability

Defendants argue that Covello did not have subjective knowledge of allegedly unsanitary conditions in the B dining hall. ECF No. 68-3 at 18-19; *see Taylor*, 880 F.2d at 1045; *Hansen*, 885 F.2d at 646. Covello declares that he delegated responsibilities including staff training and food services to institutional staff and "did not participate in daily activities or operations of these areas." ECF No. 68-7 at ¶ 3. He maintains he was unaware of any systemic issues with food served from the B dining hall or any other dining hall, or of multiple instances of food-related illness as alleged by plaintiff. *Id*. at ¶ 8.

The difficulty with defendants' argument is that they simultaneously rely on Covello's declaration for their fact-based argument that the meal plaintiff consumed on May 25, 2022 was not prepared in the B kitchen because it was closed for repairs at that time. ECF No. 68-3 at 18 (arguing that "at the time of the relevant event, the B dining hall was closed for repairs due to a pipe break in the pot scullery wall of dining hall B"). They support their argument by citing to their statement of material facts, Nos. 3-5, ECF No. 68-2 at 2. *Id*. Those factual assertions are in turn supported solely by Covello's declaration, ECF No. 68-7 at ¶¶ 3, 4, 5. Covello recalls learning in mid-2022 that a pipe had burst in the B dining hall's pot scullery wall. ECF No. 68-7 at ¶ 4. Plant Operations devised and carried out a plan for repair that temporarily closed the "B

dining hall" for approximately one month. *Id*. at ¶¶ 5, 6. But as already noted, plaintiff plausibly disputes Covello's declarations as to the timing of the closure of the kitchen of the B dining hall.

Because defendants rely almost exclusively on Covello's declarations for the material facts of their substantive defense, the court cannot grant summary judgment on this current record on the grounds that Covello has no supervisory liability. Evidence that plaintiff seeks in discovery may plausibly support Covello's claim that he was not personally involved or support plaintiff's claim that Covello direct participation supports supervisory liability. But in light of the request for further discovery calculated to elicit such evidence, it would be premature to grant summary judgment at this juncture.[7] The undersigned recommends the motion for summary judgment as to Covello be denied without prejudice to a new motion on a more fully-developed record after the conclusion of discovery. Fed. R. Civ. P. 56 (d) (1).

b) <u>Whether Plaintiff's Meal Was Prepared in The "B" Dining Hall Kitchen</u>

As noted, defendants assert that plaintiff's Eighth Amendment claim fails to demonstrate causation because the "B dining hall" was closed as of May 25, 2022 and the meal which allegedly caused plaintiff's illness was prepared in the A dining hall rather than the B dining hall. ECF NO. 68-3 at 20; *see also id*. at 18 (stating that the meal in question "did not come from B kitchen food"). Again, they point to Covello's declaration to support their assertion. ECF No. 68-3 at 18. They also argue that plaintiff's Eighth Amendment claim fails because: (1) a single instance of food poisoning is insufficient to show deliberate indifference; and (2) Covello attempted to remedy the issues with the B dining hall. *Id*. at 18-19. But they cite no authority for the first argument, and their second argument implicitly contradicts their argument that Covello has no supervisory liability.

Another reason defendants have not shown an absence of a genuine dispute regarding whether the B kitchen was closed as of May 25, 2022, is that time frame for the closure, as stated by Covello, is vague and inconclusive. A kitchen closure as of "mid-2022" does not foreclose

---

[7] As discussed above regarding plaintiff's discovery motion, plaintiff has shown that without the requested discovery he cannot present facts essential to justify his opposition to summary judgment on this question.

plaintiff's plausible assertion that meals were being prepared in the B kitchen as of May 25, 2022 and inmates were still reporting to work there. Plaintiff must receive an opportunity to develop the record on this issue. For these reasons, the undersigned recommends that summary judgment be denied without prejudice as to the Eighth Amendment claim against Covello.[8]

C. First Amendment Claims

1. Moseley

Plaintiff alleges that defendant Moseley refused to provide him with the names of food service employees who were working on May 25, 2022. ECF No. 1 at 5-6; ECF No. 7 at 4. Moseley is the statewide associate director of the Office of Appeals (OOA) for the California Department of Corrections and Rehabilitation (CDCR). ECF No. 68-5 at 1 ¶ 2. His declaration describes the process that ultimately led to exhaustion and denial of plaintiff's grievance about the temperature of the meal he was served. *Id*. at ¶¶ 4-8. The grievance was ultimately denied on the grounds that a "Temperature Log/Daily Food Control Sheet" for that date "indicated that the kitchen cooked the meal provided to Plaintiff at a temperature well above the relevant guidelines." *Id*. at ¶ 8. Moseley approved the denial of the grievance at its last stage of appeal. *Id*. But Moseley denies refusing to provide the names of food service employees, and he declares that "most of the statements attributed to me by Plaintiff were allegedly made by institutional staff [at MCSP]." *Id*. at ¶ 9.

Plaintiff "[a]dmits that he mistakenly believed that Moseley was the MCSP grievance coordinator" and he also admits that most of the statements attributed to Moseley in the complaint were instead made by institutional staff at MCSP.[9] ECF No. 75 at 19 ¶¶ 41, 42. Plaintiff nevertheless opposes entry of summary judgment in Moseley's favor because he suggests he might bring further allegations against Moseley in an amended complaint. *Id*. at 18-19 ¶ 40. But

[8] Rule 56(d)(1) authorizes the court to defer considering the motion, or to deny it. The undersigned recommends denying the motion without prejudice as the better option, because it gives both parties the opportunity to submit new briefing based on the further developed record.

[9] Plaintiff disputes aspects of Moseley's description of the process and procedures that ultimately led to denial and exhaustion of his grievance. ECF No. 75 at 16-18 ¶¶ 35-18. But this is irrelevant because grievance exhaustion is not at issue.

defendants correctly point out that the time for amending the complaint is long past. ECF No. 76 at 5. Summary judgment must be entered in favor of Moseley.

2. <u>Gates</u>

Plaintiff alleges that defendant Gates refused to provide plaintiff with the name of the nurse who administered Zofran to him (Doe No. 5). ECF No. 1 at 7; ECF No. 7 at 4. Gates was the Chief of the CDCR Health Care Correspondence and Appeals Branch (HCCAB), which oversees health care grievances, during the relevant time period. ECF No. 68-8 at 1 ¶ 2. She declares that she likely did not personally review plaintiff's grievance appeal, but rather the appeal was reviewed by a member of her staff. *Id*. at ¶ 12. According to Gates, the response given to plaintiff's request for the name of the nurse was to state the procedure that an inmate may use to obtain his medical records. *Id*. at ¶ 13. Medical records contain the names of treatment providers, and Gates declares it would have been inappropriate for her to provide those names in the response to plaintiff's grievance appeal. *Id*.

Plaintiff agrees that he was given the procedure for obtaining his medical records, but he argues that he requested names and not medical records, and that Gates should have provided them. ECF No. 75 at 21 ¶¶ 50, 51. He maintains that Gates should have answered his request for the names of treating professionals. *Id*. at ¶¶ 51, 52. Defendants point out that plaintiff does not cite any CDCR policy or other authority that would require Gates to do so. ECF No. 76 at 6.

Even if Gates is assumed to be the person who gave plaintiff information about how to obtain his medical records in lieu of giving the names of his medical providers, this would not have violated plaintiff's First Amendment rights. Omitting to name the providers might at most be construed as a lack of response, or a denial, of this aspect of plaintiff's grievance. But neither a failure to respond, nor a "mere denial of a grievance" gives rise to a First Amendment violation. *Pearson v. Carpenter*, No. 3:21-cv-00204-MMD-WGC, 2021 WL 4305067, at *3 (D. Nev. Sept. 17, 2021); *see also Boewe v. Hill*, No. ED CV 08-755-AG(E), 2008 WL 2942862, at *4 (C.D. Cal. July 29, 2008) ("The failure of prison officials to respond to or process a particular grievance does not violate the Constitution." (collecting cases)). Plaintiff also does not allege, nor show any credible evidence of, retaliatory motivation. For these reasons, summary judgment must be

entered in favor of defendant Gates as to the First Amendment claim against her.

3. Armenta

Defendant Armenta is a correctional counselor at MCSP. ECF NO. 68-6 at 1. She declares that her job entails placing trust statements in inmate mail, as follows:

> 3. At all times relevant to this case, one of my responsibilities was including a certified trust statement in MCSP inmates' legal mail if the inmate requested the inclusion of a trust statement in their mail. For legal mail where the inmate wanted a trust statement, the inmate would request a trust statement from the accounting department, I would be notified by accounting when it was ready for me to pick it up, and then I would call the inmate to come to my office to have the trust statement included, the envelope sealed and sent.
>
> 4. My practice regarding handling such outgoing inmate legal mail would be to collect the legal mail from the inmate, insert the certified trust statement inside the envelope, tape the mail closed in the presence of the inmate, sign and date (and put job title, if applicable) on the envelope, and then place the mail in the institution's legal mailbox in the mail room for processing. Once in the mailroom for processing, mailroom staff would be responsible for ensuring it was delivered to the United Stated Postal Service for delivery.

ECF No. 68-6 at 1-2 ¶¶ 3-4.

Plaintiff alleges he attempted to file a late claim with the California Government Claims Board, but he never received a response from the Board. ECF No. 1 at 7-8; ECF No. 7 at 4. He had delivered his late claim to Armenta for mailing on January 26, 2023 and she stated she would deliver it for mailing herself. ECF No. 1 at 7-8. He submits a document titled "Inmate Request for Interview" through which he apparently requested a copy of his "Incoming/Outgoing Confidential mail dating from [] Jan 2023-Feb 2023." ECF No. 75 at 54. The response appears to be that there is no log record of outgoing confidential mail. *Id*. Based on the response to his inquiry, plaintiff alleges that Armenta "failed and/or refused to forward" his item of legal mail after he left the envelope with her. ECF No. 1 at 10 ¶ 51; ECF No. 75 at 25. He also claims to have "found out about 2 months later that his mail did not reach it's [sic] destination." *Id*. He alleges that this meant he could not file a claim with the Claims Board. *Id*. He alleges a pattern of being "stonewalled" by officials "[t]hroughout this entire process." *Id*. at 24 ¶ 61.

But Armenta declares that "there is no reason [she] would have deviated" from the procedure described above, and that any deviation would have been cause for her to be disciplined. ECF No. 68-6 at 2 ¶ 5. She adds that she has no control over whether the mailroom

sent the item of legal mail after she delivered it. *Id.* ¶ 6.

Defendants argue that plaintiff has not shown improper motive, and instances of mail interference without improper motive do not give rise to a constitutional violation. ECF No. 76 at 7 (citing *Schoppe-Rico v. Rupert*, No. c 11-4283 YGR (PR), 2012 WL 4497794, at *4 (N.D. Cal. Sept. 28, 2012 (collecting cases)). They also assert there is no evidence that plaintiff suffered actual injury as a result of the failed mailing. *Id.* (citing *Lewis v. Casey*, 618 U.S. 343, 348 (1996)).

Plaintiff has not made a sufficient showing that Armenta's alleged omission was the reason his mail was not logged, or indeed that the mail was not sent, or that it was not received by the Claims Board. The undersigned recommends granting defendants' motion for summary judgment as to plaintiff's claim against Armenta.

4. <u>State Law Negligence Claims</u>

Plaintiff alleges common law negligence claims against all defendants. ECF No. 7 at 8. The elements of a common law negligence claim are: "(1) the defendant owed a legal duty to use reasonable care; (2) the defendant breached that duty; and (3) there is a proximate cause connecting the breach to (4) plaintiff's injury." ECF No. 7 at 8 (citing *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998)).

Defendants argue that plaintiffs' negligence claims fail because they did not breach any duty to him, and he cannot establish he suffered any injury as a result of defendants' conduct. ECF No. 68-3 at 25-26. Plaintiff makes the conclusory assertion that his arguments in his opposition to summary judgment "and anywhere else in the record" show that defendants breached a duty to him, and that he has suffered injury. ECF No. 75 at 32.

The Ninth Circuit Court of Appeals has held that § 820.2 of the California Government Claims Act provides immunity from liability (versus immunity from suit) for certain tort claims against prison officials. *Hampton v. California*, 83 F.4th 754, 772-773 (9th Cir. 2023). This immunity applies to acts or omissions that are "the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2; *see also Williams v. City of Fresno*, No. CV F 07-1386 LJO SMS, 2007 WL 2902973, at *6 (E.D. Cal. Oct. 2, 2007)

(California's Tort Claims Act "'confine[s] potential governmental liability to rigidly delineated circumstances'" and common law negligence claims are not actionable in the absence of liability based on statute (quoting *Brown v. Poway Unified School District*, 4 Cal. 4th 820, 8219, 15 Cal. Rptr. 2d 679, 843 P.2d 624 (1993))). Ministerial acts are not entitled to immunity. *Estate of Dobbs v. County of Sacramento*, No. 2:20-cv-1153-TLN-DB, 2023 WL 4108320, at *7 (E.D. Cal. June 21, 2023); *see also Cotta v. County of Kings*, No. 1:13-cv-359-LJO-SMS, 2013 WL 3213075, at *19 (E.D. Cal. June 24, 2013) (the creation of guidelines for cell assignment is a discretionary function entitled to immunity under § 820.2, but the application of those guidelines is a ministerial determination that is not entitled to immunity); *M.D. v. County of San Bernardino*, No. 5:22-cv-1357-SP, 20223 WL 8895699, at *8-9 (C.D. Cal. Nov. 15, 2023) (allowing negligence claim to proceed absent showing that defendants made discretionary decisions).

According to § 820.2, actions allegedly taken by Covello, Moseley, and Gates were discretionary and not actionable. Armenta's role in the handling of plaintiff's outgoing legal mail was ministerial and nondiscretionary.[10] As such, she is not entitled to immunity under § 820.2. But plaintiff's state law negligence claim against Armenta fails for the same reason his First Amendment claim fails; he cannot show that Armenta's alleged mishandling was the reason his mail was not logged and/or was not delivered. For these reasons, summary judgment must be granted on the negligence claims against all defendants.

5. <u>Qualified Immunity</u>

Qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotations omitted). A defendant is entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established"

[10] One court has held that a prisoner's claim for negligent handling of legal mail may be construed as alleging a breach of a duty imposed by prison regulations, and that the claim failed because such breaches are not actionable. *Lund v. CDCR*, No. EDCV 21-1083 JGB (KKx), 2022 WL 3012219, at *10 (C.D. Cal. June 2, 2022). But that court did not consider the application of § 820.2.

at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2010). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 743.

Showing the unlawfulness of the conduct was "clearly established" requires a showing that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id*. (citation and internal quotation marks omitted); *see also Kisela v. Hughes*, 540 U.S. 100, 105 (2018) (per curiam) ("An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" (citation omitted)). "While there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the [conduct] 'beyond debate.'" *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021) (alteration in original) (quoting *Wesby v. District of Columbia*, 583 U.S. 48, 64, 138 S. Ct. 577, 590 (2018)).

The Supreme Court has warned courts not to define clearly established law "at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam); *Kisela*, 540 U.S. at 104. "[T]he farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is perhaps regrettable but is at least arguably constitutional." *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016). But "officials can still be on notice that their conduct violated established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (explaining that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful'") (alteration in original) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Whether such a clearly established right exists is "a question of law" for the court to decide. *Morales v. Fry*, 873 F.3d 817, 819 (9th Cir. 2017)).

The court need not address the qualified immunity argument as to Moseley, Gates, and Armenta because it recommends that summary judgment be granted on the merits on the First Amendment claims against them. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5

(1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

As to Covello, defendants argue that "any reasonable prison official would believe that temporarily closing down B dining hall because of a broken pipe and serving B yard inmates from A kitchen was not a constitutional violation." ECF No. 68-3 at 27. But this argument sidesteps plaintiff's plausible assertion that the meal that sickened him was prepared in the B kitchen, before the closure of the B kitchen. The court does not reach the question of qualified immunity as to Covello for the same reasons it recommends denying without prejudice the motion to dismiss the Eighth Amendment claim against him. The question of qualified immunity may be raised on a new motion for summary judgment after completion of discovery.

## ORDER AND RECOMMENDATIONS

Accordingly, it is hereby **ORDERED** that:

1. Plaintiff's motion for terminating sanctions (ECF No. 53) is construed as a motion for entry of default judgment pursuant to Rule 37(b)(2)(A)(vi) and is DENIED.

2. Plaintiff's motion to clarify non-opposition (ECF No. 65) is construed as a motion to deem his requests for admission as admitted under Rule 36(a)(6), and is DENIED.

3. Plaintiff's motion to compel (ECF No. 66) is GRANTED IN PART and DENIED IN PART:

   a. Defendants shall supplement their responses to plaintiff's RFP Nos. 14, 15, and 16 no later than September 4, 2026.

   b. The motion is denied as to plaintiff's RFP Nos. 1, 3, 5, 6, 7, and 10.

It is hereby **RECOMMENDED** that defendants' motion for summary judgment (ECF No. 68) be GRANTED IN PART AND DENIED IN PART, as follows:

1. Summary judgment be entered as to the First Amendment claims against defendants Moseley, Gates, and Armenta.
2. Patrick Covello be reinstated as a defendant.
3. Luis Garnica be dismissed as a defendant.

4. Summary judgment be denied without prejudice as to the Eighth Amendment claim against Covello.
5. Summary judgment be granted as to all defendants on the state law negligence claims against them.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 95 F.2d 1153 (9th Cir. 1991).

DATED: August 17, 2026

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE